IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**PATRICIA A. LITTLE,**                          Case 1:14 CV 2792

    Plaintiff,                              Judge Benita Pearson

    v.                                      Magistrate Judge James R. Knepp, II

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.                              REPORT AND RECOMMENDATION

### INTRODUCTION

Plaintiff Patricia Little ("Plaintiff") filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. § 405(g). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b). (Non-document entry dated December 19, 2014). For the reasons stated below, the undersigned recommends affirming the Commissioner's decision to deny benefits.

### PROCEDURAL BACKGROUND

Plaintiff filed for DIB on November 2, 2011, alleging an onset date of January 1, 2007. (Tr. 138). Plaintiff applied for benefits due to fibromyalgia. (Tr. 55). Her claim was denied initially and upon reconsideration. (Tr. 55-66, 68-78). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (Tr. 93). Plaintiff, represented by counsel, and a vocational expert ("VE") testified at a hearing before the ALJ on April 1, 2013, after which the ALJ found Plaintiff not disabled. (Tr. 11-54). The Appeals Council denied Plaintiff's request for review,

making the hearing decision the final decision of the Commissioner. (Tr. 1); 20 C.F.R. §§ 404.955, 404.981.  Plaintiff filed the instant action on December 19, 2014. (Doc. 1).

## FACTUAL BACKGROUND

*Personal Background and Testimony*

Born March 13, 1966, Plaintiff was 47 years old as of the hearing date. (Tr. 32). She had completed high school and one year of college. (Tr. 32). She had past work as an administrative specialist in the military, a laborer, and a newspaper delivery person. (Tr. 32). However, she was unable to drive or deliver the papers when it was cold outside. (Tr. 163).

At the hearing, Plaintiff complained of fibromyalgia, chronic fatigue, major depression, post-traumatic stress disorder ("PTSD"), and after-effects from surgery and radiation treatment. (Tr. 33). She also admitted to significant alcohol use and weight gain resulting from her inactivity. (Tr. 33, 36). Despite knowing she was supposed to exercise consistently, Plaintiff did not do so because it caused her too much pain. (Tr. 39). She also testified that she had consistently needed the assistance of a cane for eleven years. (Tr. 34). Plaintiff complained her pain was most severe in the right leg and in the left arm. (Tr. 35). She also complained of fasciitis in her right foot, bilateral knee problems, acid reflux, sleep apnea, insomnia, lesions under her armpits, and urinary and bowel incontinence. (Tr. 40-44).

Plaintiff stated she had gone to group and individual psychotherapy, as well as numerous other therapies such as water therapy, heat, and massage. (Tr. 44-45). These therapies, orthotics, and a TENS unit gave her minor relief but it was inconsistent. (Tr. 47). While at times her pain improved, she claimed it always came back worse than before. (Tr. 45).

On an average day, she stated she slept poorly and had to move gently because of the pain. (Tr. 37). If she was not going anywhere that day, she ignored her hygiene; but otherwise

she got dressed and perhaps did the dishes or ironed, but she had to take breaks. (Tr. 37). She rotated between standing, sitting, and laying down to complete tasks. (Tr. 38, 198). Plaintiff claimed she was unable to finish cooking meals or doing laundry before her energy wore out. (Tr. 49-50).

*Relevant Medical Evidence[1]*

*Physical*

Prior to the alleged onset date, Plaintiff was diagnosed with non-Hodgkin's Lymphoma, for which she received surgery, was treated, and as of the date of the hearing, was in remission. (Tr. 376). She also had a history of arthritis in her left elbow, migraine headaches, bladder and bowel incontinence, sleep apnea, anemia, gastritis, menorraghia, and fibromyalgia. (Tr. 242, 266, 280, 326, 358-61, 364, 377, 582).

Dr. Margaret Tsai documented a full range of motion, no synovitis, and normal muscle tone throughout Plaintiff's joints but also found eighteen out of eighteen trigger points for fibromyalgia in April 2007. (Tr. 442). In August 2007, Mathilde Pioro, a rheumatologist, recommended Plaintiff lose weight and participate in light, daily exercise to relieve her pain; Dr. Pioro commented Plaintiff did not take an active role in her own care. (Tr. 433). She also noted Plaintiff's "[p]ain [was] out of proportion to physical findings" and noted a "significant psychological component" to her complaints. (Tr. 432). Dr. Pioro observed normal joints, without synovitis and full range of motion, and normal muscle tone. (Tr. 432). This psychological component was also noted later in her medical care on multiple occasions. (Tr. 271, 283).

---

1. This summarization of medical evidence contains certain objective findings from prior to the alleged onset date; they are included for historical reasons.

3

In physical therapy sessions in 2008, Plaintiff stated cold weather increased her pain which was between a five and six out of ten but she was able to ambulate independently. (Tr. 401-05, 409-10). Plaintiff reported her pain decreased after the sessions. (Tr. 402-03, 410).

On June 24, 2008, Plaintiff reported pain with standing and sitting; and that physical therapy, ice, heat, and a TENS unit were ineffective at controlling her pain. (Tr. 376). She also complained of sensitivity to light touch and trouble sleeping and performing repetitive motions, although her nerve tests were negative. (Tr. 377). On examination, Plaintiff had twelve of eighteen tender points indicative of fibromyalgia. (Tr. 377). In June 2009, Plaintiff described her pain as aching, gnawing, nagging, shooting, and pressure. (Tr. 339). Her pain level was a five out of ten, which was normal for her. (Tr. 338).

In September 2010, Plaintiff reestablished care with the Veteran's Administration ("VA") and reported an inability to shop, cook, or do laundry on her own; however, she could perform basic hygiene. (Tr. 319). She also requested psychology consults and reenrollment in the pain education support groups because both were helpful in coping with her fibromyalgia. (Tr. 319). She stated her pain occurred at rest and described it as pressure and non-radiating. (Tr. 319). A few months later, Plaintiff reported her fibromyalgia was doing well. (Tr. 295).

Plaintiff returned to physical therapy starting in January 2011, where she reported her pain as a six out of ten, yet she was enthusiastic to begin therapy. (Tr. 286, 288). Plaintiff also complained of instability and falls although she demonstrated an ability to ambulate without an assistive device in the clinic. (Tr. 289). While the pain increased following the sessions, Plaintiff returned for more sessions, again reported pain at the level of six out of ten, and remained enthusiastic about physical therapy. (Tr. 273, 284, 286).

While she continued medication treatment for fibromyalgia and her numerous other conditions, Plaintiff's main physical complaint from March 2011 to March 2012 was right heel pain which was eventually resolved by the use of insoles but occasionally returned. (Tr. 497-530, 538, 562). Dr. Megan McNamara, on December 31, 2012, noted Plaintiff's instances of incontinence had decreased by 50% after discontinuing one of her medications. (Tr. 554).

*Mental*

Plaintiff's appointments throughout 2007 displayed overwhelming tearfulness, depression, and issues with self-worth. (Tr. 422-24, 427, 450-72). In November 2007, Plaintiff was future-oriented but reported a three-day period where she had cried non-stop. (Tr. 419). At this time, she had been off her medication for approximately four months. (Tr. 419). A report a month later from another provider suggested Plaintiff may have been exaggerating her symptoms. (Tr. 419).

In June 2008, Plaintiff presented to Cherie Bagley, Ph.D., as smiling, excited, and in a positive mood. (Tr. 374). She was wearing a light blanket, had no cane, was walking faster, and stated she had made significant improvement with physical therapy. (Tr. 374). These reports are consistent with her earlier visits to Dr. Bagley that year. (Tr. 392-93, 400).

Throughout 2009, Plaintiff regularly attended and actively participated in a pain support group through the VA where she shared her experiences in coping with her chronic pain. (Tr. 324, 325, 326, 327, 328, 329, 331, 332, 336).

Plaintiff saw Dr. Bagley on April 10, 2009, where she came in with a heavy bag, blanket, and cane. (Tr. 347). She was still having difficulty accepting her medical problems and was confused over her status in the military. (Tr. 347). Plaintiff was at times tearful and denied being an alcoholic as alleged by other providers. (Tr. 348, 351). At an appointment a month later, she

5

was smiling but covered in a blanket. (Tr. 345). Dr. Bagley observed that she was emotionally stronger than when they had first met. (Tr. 345).

In June 2009, Plaintiff saw psychologist Suzanne Ruff who noted her mood was generally positive, although she did become tearful on two occasions. (Tr. 336). Dr. Ruff observed Plaintiff was wearing several layers of clothing, including gloves, despite the fact it was not cold outside and the air conditioning was not on. (Tr. 336). Dr. Ruff suggested desensitization training, i.e., removing her gloves or warm clothes for short periods to increase her tolerance; however, Plaintiff was not interested in this treatment method. (Tr. 336). That same month, Plaintiff had an appointment with Dr. Bagley where she was excitable and somewhat tearful in relation to her attempt to receive disability benefits. (Tr. 337).

In September 2009, Plaintiff presented to Dr. Bagley as elated, bouncy, happy, and smiley because her VA disability was granted. (Tr. 330). She was not carrying a blanket or other heavy clothing and was not wearing gloves, although she was dressed in long sleeves, pants, and a hat. (Tr. 330). Dr. Bagley noted she walked more comfortably on this occasion but Plaintiff told her she was relieved, enjoyed her group therapy, and was planning to lose weight. (Tr. 331).

After almost a year's absence, Plaintiff returned to Dr. Bagley in October 2010, where she reported she was reorganizing her life and was bouncy and smiling. (Tr. 304). However, Dr. Bagley observed this may be a façade as Plaintiff reported, "she has learned to put on a smiling face." (Tr. 304). She also returned to group pain therapy after a year's absence, Plaintiff actively participated in all of the discussions and supported her peers at sessions throughout late 2010 and early 2011. (Tr. 240, 241, 257, 261, 268-69, 281, 284, 291-92, 293, 294, 300, 303, 307, 312).  It was noted by the overseeing psychologist that Plaintiff had come to terms with "fears that perhaps she was not as disabled as she saw herself." (Tr. 307).

6

In March 2011, Plaintiff saw Dr. Bagley for the first time in five months. (Tr. 267). Dr. Bagley observed Plaintiff arrived without a blanket, was positive and enthusiastic, had lost twenty pounds, and believed her group therapy to be beneficial. (Tr. 267). While in the past Plaintiff had struggled with her feelings of unworthiness, she was moving forward and more accepting of assistance. (Tr. 267). After the session, Dr. Bagley noted Plaintiff's depression was in remission. (Tr. 267). Plaintiff returned to Dr. Bagley on June 24, 2011, who reported Plaintiff was "doing well", taking more pride in herself, and accepting her medical problems. (Tr. 240). Plaintiff reported finishing things on her bucket list, starting school, reaching out to old friends, having a good relationship with her daughter, and taking tai chi. (Tr. 240).

Dr. Bagley saw Plaintiff again in March 2012, after an absence of seven months. (Tr. 494). Plaintiff believed she was depressed and Dr. Bagley noted she was not her normal self. (Tr. 494). However, Plaintiff had been socializing more with her family and reported "I love retirement." (Tr. 494). In May 2012, Plaintiff returned very enthused, with a euthymic mood, and without a blanket but utilizing a cane. (Tr. 624).

*State Agency Reviewers*

In January 2012, John Waddell, Ph.D., opined Plaintiff had no restriction in maintaining social functioning, mild restrictions in activities of daily living, and moderate difficulties in maintaining concentration, persistence, and pace. (Tr. 60, 63-64). At the same time Maureen Gallagher, D.O., opined Plaintiff could occasionally lift or carry up to twenty pounds; stand, walk, or sit for up to six hours in an eight hour workday; had unlimited push/pull ability; could frequently balance or climb ramps and stairs; occasionally stoop, kneel, crouch, crawl and climb ladders, ropes, or scaffolds; and should avoid exposure to extreme cold and hazardous conditions. (Tr. 61-63).

7

On reconsideration, Irma Johnston, Psy.D., opined Plaintiff had mild restrictions in activities of daily living and maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. (Tr. 72, 75-76). Jeffrey Vasiloff, M.D., further restricted Plaintiff's physical capabilities to being able to stand or walk for only four hours in an eight-hour workday, only occasionally climb ramps or stairs, and never climb ladders, ropes, or scaffolds. (Tr. 72-74).

*Opinion Evidence*

Terasha Whitehead, Plaintiff's daughter, wrote an email describing her observations about her mother's ailments. (Tr. 201-04). Ms. Whitehead opined that Plaintiff's physical health had been in a constant state of decline and this also negatively affected her mental state. (Tr. 202). Ms. Whitehead wrote that her mother regularly experienced mood swings, depression, and feelings of self-pity. (Tr. 203). She stated the simplest tasks caused her mother to experience intense pain and become fatigued. (Tr. 202). Ms. Whitehead also wrote that Plaintiff's ability to concentrate and pay attention had decreased because of the pain. (Tr. 202). She stated her mother cannot leave the house or complete chores without assistance from others. (Tr. 204).

Renea Powe, Plaintiff's friend, wrote a letter describing the decline in quality of life she had seen in regards to Plaintiff. (Tr. 205). She described constant complaints of pain, cold, exhaustion, and depression, and a decrease in ability and desire to socialize. (Tr. 205).

Kevin Whitehead, Plaintiff's son-in-law, wrote an email describing his observations of Plaintiff. (Tr. 206). Mr. Whitehead stated he did the cooking, laundry, and other chores because Plaintiff was unable to do them. (Tr. 206). He had witnessed her pain, decreased mental focus, difficulty with ambulating, and isolationist tendencies. (Tr. 206).

Plaintiff's other friend, Deborah Williams, described Plaintiff as a great friend but has noticed a decrease in her abilities. (Tr. 207). Ms. Williams stated she runs errands for her, including the grocery shopping. (Tr. 207). She observed Plaintiff having difficulty with stairs, low energy levels, and poor mental concentration. (Tr. 207). Ms. Williams also commented that Plaintiff's symptoms increase during the colder weather, and that sometimes it takes her a week to recover from activity. (Tr. 207).

*VA Disability Determination*

Plaintiff was awarded service connected disability for non-Hodgkin's lymphoma, fibromyalgia, abdominal issues, urinary incontinence, bowel incontinence, and dislocated left elbow residuals. (Tr. 634-47). The conditions upon which this decision was largely based were her urinary and bowel incontinence, and her "diffuse pain syndrome consistent with fibromyalgia". (Tr. 635). Plaintiff's disability rating was determined to be 80%. (Tr. 676).

*ALJ Decision*

In June 2013, the ALJ concluded Plaintiff had the severe impairments of fibromyalgia, obesity, affective disorder, personality disorder, and a history of alcohol abuse; but these severe impairments did not meet or medically equal any listed impairment. (Tr. 16-18). The ALJ then found Plaintiff had the RFC to perform light work except that she could only occasionally climb ramps or stairs, but never ladders, ropes, or scaffolds. (Tr. 18). She could occasionally balance, stoop, or crouch, but never kneel or crawl. (Tr. 18). She must also avoid high concentrations of cold, dangerous machinery, and unprotected heights, but she is able to perform simple, routine tasks. (Tr. 18).

Considering the VE testimony and Plaintiff's age, work experience, and RFC, the ALJ found Plaintiff could perform her past relevant work in newspaper delivery. (Tr. 23). However,

the ALJ also found, in the alternative, that Plaintiff could perform other work such as a clerical assistant, housekeeping-cleaner, or mail clerk. (Tr. 24).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. § 404.1520 – to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The Commissioner considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff argues the ALJ erred because (1) he applied the wrong standard in evaluating Plaintiff's fibromyalgia and credibility; (2) the RFC did not accurately reflect her functional limitations and was not based on substantial evidence; and (3) he did not properly evaluate the opinions from the VA, and her family and friends. (Doc. 10, at 1-2). The Court will address each argument in turn.

11

*Fibromyalgia*

Fibromyalgia is a unique condition "marked by 'chronic diffuse widespread aching and stiffness of muscles and soft tissues.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 244 n.3 (6th Cir. 2007) (quoting *Stedman's Medical Dictionary for the Health Professions and Nursing* at 541 (5th ed. 2005)). Diagnosing fibromyalgia involves "observation of the characteristic tenderness in certain focal points, recognition of hallmark symptoms, and 'systematic' elimination of other diagnoses." *Rogers*, 486 F.3d at 244 (quoting *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 820 (6th Cir. 1988)). CT scans, x-rays, and minor abnormalities "are not highly relevant in diagnosing [fibromayalgia] or its severity." *Id.*; *see also Preston*, 854 F.2d at 820. "[P]hysical examinations will usually yield normal results – a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions. There are no objective tests which can conclusively confirm the disease; rather it is a process of diagnosis by exclusion". *Id.* at 818.

However, as unique as fibromyalgia may be, it does not carve out an exception to the Social Security Act's mandate that "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability". 42 U.S.C. § 423(d)(5)(A); To this end, "[t]he mere diagnosis of fibromyalgia, coupled with allegations of disabling subjective limitations, does not, *ipso facto*, require an ultimate finding of disability." *Cooper v. Astrue*, 2010 WL 5557448, at *4 (W.D. Ky. 2010). As the Sixth Circuit has said, "a diagnosis of fibromyalgia does not automatically entitle [a claimant] to disability benefits . . . . Some people may have a severe case of fibromyalgia as to be totally disabled from working but most do not and the question is whether claimant is one of the minority." *Vance v. Comm'r of Soc. Sec.*, 260

F. App'x 801, 806 (6th Cir. 2008) (unpublished) (citing *Rogers*, 486 F.3d 234; *Preston*, 854 F.2d 815).

While the Plaintiff is correct in asserting that objective evidence of fibromyalgia is usually lacking; she is incorrect to assert that the ALJ errs by reviewing objective medical evidence. (*See* Doc. 10 at 11). The objective medical evidence, regardless of the condition, is relevant to a disability determination. Furthermore, where objective evidence of disability is absent, it is the responsibility of the ALJ to evaluate the credibility of a claimant's statements of pain; one way this is accomplished is by comparing them to the objective evidence and observations of medical professionals.

Since fibromyalgia usually lacks objective findings, a Plaintiff's subjective complaints of pain may support a finding of disability. *See King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984). However, an ALJ is not required to accept a claimant's own testimony regarding her pain. *See Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). Thus, due to the subjective nature of fibromyalgia an ALJ is to consider certain factors in determining whether a claimant has disabling pain: 1) daily activities; 2) location, duration, frequency, and intensity of pain or symptoms; 3) precipitating and aggravating factors; 4) the type, dosage, effectiveness, and side effects of any medication; 5) treatment, other than medication, to relieve pain; and 6) any measures used to relieve pain. 20 C.F.R. § 404.1529(c)(3); *Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994).

Ultimately, it is for the ALJ, not the reviewing court, to judge the credibility of a claimant's statements. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (ALJ's credibility determination accorded "great weight"). An ALJ is not required to accept as credible a Plaintiff's testimony regarding symptoms, *see Hickey-Haynes v. Barnhart*, 116 F. App'x 718,

13

726-27 (6th Cir. 2004), and in evaluating that credibility the ALJ can consider the entire record SSR 96-7p, 1996 WL 374186, *1. The Court is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [claimant's testimony] are reasonable and supported by substantial evidence in the record." *Jones*, 336 F.3d at 476. The Court may not "try the case de novo, nor resolve conflicts in evidence . . . " *Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987).

Where, as here, the medical evidence does not show abnormalities – as is common with a diagnosis of fibromyalgia – the question of disability turns on a credibility determination. The ALJ determined Plaintiff's severe and non-severe impairments combined with Plaintiff's subjective complaints, could reasonably be expected to cause the alleged symptoms; however, her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible. (Tr. 19). In reaching this conclusion, the ALJ noted inconsistent medical evidence and observations, and her failure to follow recommended treatment courses. (Tr. 19-21, 23).

The record establishes that Plaintiff has complained of generalized pain as far back as 1999 (*See* Tr. 649-674); however, during the relevant time period – January 2007 and onward – the record is somewhat lacking with regard to medical visits or treatment efforts for her fibromyalgia. In fact, the record shows that the only treatment Plaintiff consistently employed was medication and she consistently reported a stable pain level. (*See* Tr. 273, 284, 286, 295, 338, 401-05, 409-10). Plaintiff intermittently attempted physical and mental therapy, which she reported were helpful in reducing the pain, but she failed to continue these treatment options. (*See* Tr. 23, 273-86, 319, 374, 402-03, 410). Plaintiff also ignored recommendations to lose weight, perform daily exercise, and participate in desensitivity training. (*See* Tr. 23, 336, 433). There were also a number of notations by both her physical and mental health providers that

suggested Plaintiff's physical condition was not as severe as she alleged, but rather involved a "significant psychological component". (*See* Tr. 20, 271, 283, 307, 419, 432). This evidence coupled with normal physical findings is ample evidence to support a conclusion that Plaintiff's pain was not as severe as she alleged. (*See* Tr. 19-20, 377, 432, 442).

The Court is limited to determining whether the ALJ applied the appropriate standard to the credibility assessment. *Cruse*, 502 F.3d at 542. It is certainly true that Plaintiff can construe the facts in a different light; however, that does not alter the reasonableness of the ALJ's conclusions that Plaintiff's treatment efforts, the relative stability of her condition, a failure to follow treatment recommendations, and her improvement when in compliance with treatment recommendations, do not wholly support her credibility. *See Jones,* 336 F.3d at 477. From a review of the opinion and the record, the ALJ applied the correct standard and had substantial evidence to support the conclusion that Plaintiff was not entirely credible.

## *RFC*

A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). An ALJ must consider all symptoms and the extent to which those symptoms are consistent with the objective medical evidence. § 416.929. The RFC determination is one reserved for the ALJ. 20 C.F.R. § 416.946(c); *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) ("The responsibility for determining a claimant's [RFC] rests with the ALJ, not a physician."); SSR 96-5p, 1996 WL 374183, at *5. If the ALJ's decision was supported by substantial evidence, this Court must affirm. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Plaintiff argues the ALJ failed to take into account all of Plaintiff's symptoms and functional limitations such that the RFC lacked a basis in substantial evidence. (Doc. 10, at 14-15).

The ALJ found Plaintiff was capable of a reduced level of light work based on the opinions of the state agency reviewers. (Tr. 18, 22-23). Importantly, these were the only medical opinions in the record which opined on Plaintiff's functional limitations. *See Dover v. Astrue*, 2008 WL 5083512 (E.D. Ky.) (an ALJ may reasonably rely on state agency reviewers' opinions when they are the only opinions within the record). Although, Plaintiff argues the VA determination should be persuasive as to her inability to work; the ALJ is correct, there is no recitation of the standard employed by the VA in determining disability. While the VA's determination is supported by medical documentation, it does not discuss Plaintiff's maximum functional limitations despite these impairments; a central inquiry in social security decisions. (*See* Tr. 634-47).

Also it is certainly possible, as Plaintiff argued, that the nature of fibromyalgia provides for asymptomatic periods that are not indicative of her condition; however, consistent with SSR 12.2 an ALJ is to evaluate the claimant's functionality and physical strength longitudinally. After reviewing the record, Plaintiff's complaints and physical abilities have remained relatively stable. (*See* Tr. 19-20, 288-89, 331, 374, 392-93, 400-14, 432-33, 442). Despite consistent complaints of pain, her physical abilities – including the ability to ambulate independently, participate in physical therapy, and perform basic tasks – have remained intact. (Tr. 286, 289, 319, 401-05, 409-10); *see Yang v. Comm'r of Soc. Sec.,* 2004 WL 1765480, at *5 (E.D. Mich.) ("A claimant's severe impairment may or may not affect his or her functional capacity to work. One does not necessarily establish the other.").

Plaintiff also argued the ALJ erred by not including limitations for her incontinence; however, the state agency reviewers had all the information regarding her incontinence and found it did not warrant a restriction. (Tr. 61-63, 72-74). Additionally, a report at the end of

December 2012, remarked that Plaintiff's incontinence was improved "by about 50%" by discontinuing medication. (Tr. 554). Thus, not only did the state agency reviewers have evidence of Plaintiff's incontinence, and deem it non-limiting; the ALJ had further evidence of improvement in Plaintiff's condition. Lastly, aside from her own testimony, Plaintiff has cited to no evidence that would undermine the opinion of the state agency reviewers on the limiting effects of her incontinence. *See Douglas v. Comm'r of Soc. Sec.*, 832 F.Supp. 2d 813, 823-24 (S.D. Ohio 2011) ("the opinions of non-examining state agency medical consultants have some value and can, under some circumstances, be given significant weight."); § 416.927(d),(f); SSR 96–6p. (such sources are viewed "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act.").

The question on review is not whether substantial evidence could support another conclusion, but rather, whether substantial evidence supports the conclusion reached by the ALJ. *Jones,* 336 F.3d at 477. Here, the ALJ had substantial evidence upon which to base his RFC determination.

*"Other Source" Opinions*

The final assignment of error Plaintiff raises is that the ALJ improperly evaluated the opinions of Plaintiff's friends and family, and the VA determination. (Doc. 10, at 16-19). The regulations provide specific criteria for evaluating medical opinions from "acceptable medical sources"; however, they do not explicitly address how to consider opinions and evidence from "other sources", including "non-medical sources" listed in §§ 404.1513(d) and 416.913(d). SSR 06-3p clarifies opinions from other sources "are important and should be evaluated on key issues such as impairment severity and functional effects." SSR 06-3p, 2006 WL 2329939, at *3 (Aug.

17

9, 2006). SSR 06-3p also states other sources should be evaluated under the factors applicable to opinions from "acceptable medical sources" – i.e., how long the source has known and how frequently the source has seen the individual; consistency with the record evidence; specialty or area of expertise; how well the source explains the opinion; supportability; and any other factors that tend to support or refute the opinion. SSR 06-3p; 20 C.F.R. § 404.1527(d)(2).

In the Sixth Circuit, "an ALJ has discretion to determine the proper weight to accord opinions from 'other sources'". *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007). While the ALJ "does not have a heightened duty of articulation when addressing opinions issued by 'other sources', the ALJ must nevertheless "consider" those opinions. *Hatley v. Comm'r of Soc. Sec.*, 2014 WL 3670078 (N.D. Ohio); *see also Brewer v. Astrue*, 2012 WL 262632, at *10 (N.D. Ohio) ("SSR 06-3p does not include an express requirement for a certain level of analysis that must be included in the decision of the ALJ regarding the weight or credibility of opinion evidence from 'other sources.'").

The ALJ discounted the opinions of Plaintiff's family and friends because he inferred an improper bias in favor of Plaintiff and because they were inconsistent with the medical evidence. (Tr. 21-22). However, the ALJ did not cite to the supposed medical evidence with which their testimonials were inconsistent nor is there an indication of whether it was physical or mental evidence. Upon review of the evidence in the record, the reports of Plaintiff's family and friends are consistent with the reports of Plaintiff's mental health providers; who noted depression and social isolation. (*See* Tr. 336, 348, 419, 422-24, 427, 450-72, 494). Similarly, the medical record also contains citations to usage of a cane, slow walking, antalgic gait, and intolerance to cold. (*See* Tr. 345-48, 376-77, 665, 669). The ALJ cannot base his determinations of weight on unsupported statements of inconsistency. Furthermore, the inference that Plaintiff's friends and

family were untruthful was based on nothing more than speculation. Here, the ALJ satisfied his obligation to consider the "other source" opinions however; his proffered reasons for discrediting their opinions were insufficient, mainly because they were unsupported by fact. When the opinions of Plaintiff's family and friends could be supportive of the Plaintiff's credibility and functional limitations, their dismissal must be based on identifiable evidence.

Although the ALJ did fail to properly discredit the "other source" opinions of Plaintiff's family and friends, any error is harmless. As discussed above, the ALJ had substantial evidence to support his RFC determination – namely, the unrefuted opinions of the state agency reviewers. Even crediting Plaintiff's family and friends as entirely credible, which is not a foregone conclusion, there is no reason to believe the ALJ's disability determination would be any different on remand. *Shkabari v. Gonzalez*, 427 F.3d 324, 328 (6th Cir. 2005) (quoting *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989)) ("[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."). In this instance, the Court finds "remand would be an idle and useless formality". *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) (quoting *NLRB v. Wyman-Gordon*, 394 U.S. 759, 766 n.6 (1969)).

As to the VA determination, the Court adequately addressed the weight given and the reasons for its dismissal in the RFC review. *Supra* at 16. However, the ALJ appropriately determined Plaintiff was unable to return to military service, which is the central finding of the VA; but also noted that the standard employed to make that decision was unknown. (Tr. 21). The Court is satisfied that this is an adequate reason to discount the opinion of another governmental agency.

## CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying DIB is supported by substantial evidence, and therefore recommends the Commissioner's decision be affirmed.

 s/James R. Knepp II
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).